UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRAVIS GLENN, <br><br>         Plaintiff, <br><br>    v. <br><br> TRIDENT SEAFOOD COMPANY, <br><br>         Defendant. | CASE NO. C20-1583 MJP <br><br> ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment. (Dkt. No. 48.) Having reviewed the Motion, the Opposition (Dkt. No. 52) and all supporting materials, the Court DENIES the Motion.

**BACKGROUND**

Plaintiff Travis Glenn pursues claims against his former employer, Trident Seafood Company, for racial discrimination under Washington's Law Against Discrimination (WLAD) and Title VII of the Civil Rights Act of 1964. (Amended Complaint § III ¶¶ 1-7 (Dkt. No. 25).) Glenn began working at Trident in January 2019 at Trident's Sand Point processing plant in

Alaska. (Id. § II ¶ 1; Declaration of Laura Schmidt ISO of Def. Opp. ¶ 5 (Dkt. No. 54).) Glenn, who is Black, alleges that he endured two episodes in which other Trident employees made racist remarks or gestures towards him. First, on July 4, 2019, Glenn alleges that Robert Garcia, a shipping manager, told Glenn at a barbeque that "we try to keep people like you out" and "we don't want you people to take over." (Am. Compl. § II ¶ 2.) Glenn reported these comments to Shane Flaminio, a Safety Manager. (Id.) Second, on July 6, 2019, Glenn asserts that he discovered a yellow rope fashioned into a noose that was a placed on a chair in a breakroom where he had been earlier sitting. (Id. ¶ 3.) He contacted "Housing Manager, Jose," and Safety Manager, Adrian Silla, about this incident. (Id.) Glenn alleges that Trident failed to take "reasonably prompt corrective action" and did not inform him of any investigatory steps it took in response to these two incidents. (Id. ¶¶ 7-8.) Glenn identifies another episode on July 14, 2019, when he claims he was called a "Sissy" numerous times in front of Garcia. (Id. ¶ 10.) Despite complaining about this incident, he claims no action was taken.

Glenn alleges he was removed from his position as Timekeeper on July 15, 2019 for allegedly missing a shift "despite having request[ed] the day off due to the hostile work environment." (Am. Compl. § II ¶ 11.) He alleges that others similarly situated were not demoted or disciplined for tardiness or absenteeism. (Id.) He alleges that he suffered this adverse employment action as retaliation for reporting racially discriminatory conduct and that the demotion was unfounded. (Id. ¶¶ 11-13.) He alleges that this created and constituted an intolerable and hostile work environment. (Id. ¶¶ 14-17.) Glenn avers that the hostile work environment caused him to resign from Trident. (Id. ¶ 17.) He alleges that on July 21, 2019, Schmidt "unilaterally" purchased him a ticket home "thereby implicating the termination of the Plaintiff's employment. . . ." (Id. ¶ 18.)

Glenn, who is acting pro se, seeks summary judgment on his retaliation, constructive discharge, and hostile work environment claims brought under the WLAD and Title VII of the Civil Rights Act. (Dkt. No. 48 at 1.) He also asks for summary judgment on a "gross negligence" claim that is not pleaded in the Amended Complaint. (Id.) And while acknowledging that the claim is not in the amended complaint, Glenn asks the "court to rule on the allegation of violating the Family and Medicare Care Act." (Id.) Glenn asks for the Court to enter judgment in his favor on all claims and award for $50 million in damages. (Dkt. No. 48 at 18.)

Trident opposes the Motion and provides evidence contradicting many of the allegations and exhibits Glenn has provided. (See Declarations and exhibits thereto of Benjamin Stone (Dkt. No. 53), Laura Schmidt (Dkt. No. 54), Shane Flaminio (Dkt. No. 55), Robert Garcia (Dkt. No. 56), Armand Audette (Dkt. No. 57), Scott Browning (Dkt. No. 58), and Adrian Silla (Dkt. No. 59).) The Court briefly reviews Trident's documentary evidence in relation to the allegations.

First, as to the July 4, 2019 incident, Robert Garcia admits he told Glenn he did not want "your kind" in the warehouse that he oversaw, but maintains that he was referring to his belief that Glenn was "someone who looked for easy work, had been in fights with other employees, and was known to be a womanizer." (Garcia Decl. ¶¶ 4-5.) Garcia avers that when he was interviewed by Shane Flaminio, he explained his comments "were due to [Glenn's] reputation at Sand Point, not his race." (Id. ¶ 7.) For his part, Flaminio confirms that he investigated Glenn's complaint about Garcia's comments. (Flaminio Decl. ¶ 4.) He spoke to Garcia and heard Garcia's views that his comments were not in reference to Glenn's race. (Id. ¶ 4.) Flaminio also explains that he reported to Glenn what Garcia had told him, informed Glenn of his rights to file a formal complaint, and that Glenn indicated his desire not to do so. (Id. ¶ 5.)

1    Second, as to the incident involving the alleged noose, several declarants dispute the
2    factual allegations. Adrian Silla was the person to whom Glenn reported finding the noose. (Silla
3    Decl. ¶ 3.) Silla told Glenn to draft a statement and report the matter to the police (Id. ¶ 4.) Silla
4    also retrieved the rope from the trash can where Glenn had thrown it and that that it did not look
5    like a noose. (Id. ¶ 5.) Silla reported the matter to Assistant Plant Manager Robert Browning for
6    further investigation. (Id.) Armand Audette declares that he, too, examined the alleged noose and
7    "it was clear to [him] the rope was not tied in a noose." (Audette Decl. ¶ 3.) Nonetheless,
8    Audette also asked Browning to investigate. (Id. ¶ 4.) Browning declares that his investigation
9    uncovered no racial motive and that the individuals in the breakroom denied having left a noose.
10   (Browning Decl. ¶ 5.) And in late July 2019, Laura Schmidt states that she met with Glenn to
11   discuss Trident's investigation into the alleged noose and she claims Glenn agreed "the rope
12   could not have been tied into a noose and left for him because, when he left the breakroom
13   before finding the noose, no one knew he would be returning." (Schmidt Decl. ¶ 8.)
14   Third, as to the incident where Glenn claims he was called a "sissy," Garcia states that he
15   never called Glenn a "sissy." (Garcia Decl. ¶ 8.) And Flaminio reports that he investigated
16   Glenn's complaint about the "sissy" comment and that Garcia denied having made it. (Flaminio
17   Decl. ¶ 6.)
18   Lastly, Trident has produced its anti-harassment and anti-discrimination policies. (Ex. A
19   to Schmidt Decl.) And Schmidt avers that employees receive training on these policies and are
20   informed of their ability to lodge complaints, and that they are told they can always ask for her
21   assistance if they encounter any harassment or discrimination. (Schmidt Decl. ¶¶ 3-4.)

ORDER DENYING MOTION FOR SUMMARY JUDGMENT - 4

# ANALYSIS

## A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323-24.

## B. Unpleaded Claims

Before addressing Glenn's WLAD and Title VII claims, the Court first notes that it will limit its review of the claims that are included in the Amended Complaint. Federal Rule of Civil Procedure 15(d) provides the appropriate means for Glenn to seek permission to add new claims in this case. Cabrera v. City of Huntington Park, 159 F.3d 374, 382 (9th Cir. 1998). It is improper to add new claims through a motion for summary judgment, as it does not provide the non-moving party sufficient basis to defend itself against the newly alleged claims. Because

1 | Glenn has not sought leave of Court to add new claims at this late stage of this case, the Court
2 | declines to consider either newly-asserted claim.

3 | C.     **Summary Judgment Inappropriate**

4 | The Court finds that summary judgment is inappropriate on the record before it.

5 | First, the Court agrees with Trident that Glenn has not properly supported his motion
6 | with admissible evidence. Glenn has attached several exhibits to his motion, but he has not
7 | provided a declaration attesting to their admissibility. The exhibits themselves do not appear to
8 | be admissible. Similarly, Glenn's motion contains many statements that Trident has admitted
9 | certain facts, but he provides no supporting statements or admissible evidence to back up these
10 | assertions. (See, e.g., Mot. at 3 (stating that Trident "admits" that Glenn found "a yellow rope
11 | fashioned into a noose"); id. at 6 (stating that Trident "admits" that Schmidt While this could").)
12 | The failure to provide competent evidence to support the Motion is an adequate and independent
13 | ground on which to deny the Motion. See Fed. R. Civ. P. 56(c). But given that Glenn is acting
14 | pro se, the Court also considers the merits of his Motion.

15 | Second, after considering the evidence submitted by both parties, the Court finds that
16 | there are disputed issues of material fact that make summary judgment improper on this record.
17 | The Court reviews the disputes in the subsections below.

18 | 1.     **Hostile Work Environment**

19 | To prevail on his Title VII hostile-work-environment claim, Glenn must show with facts
20 | and not merely conclusory statements: "(1) that he was subjected to verbal or physical conduct
21 | because of his national origin; (2) that the conduct was unwelcome; and (3) that the conduct was
22 | sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an
23 | abusive work environment." Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002)

24 |

1  (quotation and citation omitted). Glenn must also show that a reasonable person in his

2  circumstances would consider the working environment to be abusive or hostile. See Fuller v.

3  City of Oakland, California, 47 F.3d 1522, 1527 (9th Cir. 1995). And "even if a hostile working

4  environment exists, an employer is only liable for failing to remedy harassment of which it

5  knows or should know." Id. And to prove his hostile work environment claim under the WLAD,

6  Glenn must show: (1) that he is a member of a protected class, (2) that the harassment was

7  unwelcome, (3) that it was because of his race, (4) that it affected the terms or conditions of

8  employment, and (5) that it was imputable to the employer. Robel v. Roundup Corp., 148 Wn.2d

9  35, 45 (2002) (considering disability discrimination claims).

10  Construing the evidence in Trident's favor, the Court finds disputed material facts

11  preclude summary judgment on these claims. In particular, the Court finds disputes of fact exist

12  as to whether the harassment Glenn alleges he endured was sufficiently severe to alter the

13  conditions of his employment, whether a reasonable person would have considered the

14  environment hostile or abusive, and whether the allegedly improper acts were imputable to

15  Trident. At a minimum, these disputed areas of fact require the fact finder to resolve them.

16  Summary judgment is DENIED as to these claims.

17  **2.    Retaliation**

18  Under Title VII, "[t]o succeed in a retaliation claim, the plaintiff must demonstrate (1)

19  that she was engaging in protected activity, (2) that she suffered an adverse employment

20  decision, and (3) that there was a causal link between her activity and the employment decision."

21  Hashimoto v. Dalton, 118 F.3d 671, 679 (9th Cir. 1997). And under the WLAD, the "employee

22  must show that (1) he engaged in a statutorily protected activity, (2) the employer took an

23  adverse employment action against the employee, and (3) there is a causal connection between

24

the employee's activity and the employer's adverse action." Boyd v. State, Dep't of Soc. & Health Servs., 187 Wash. App. 1, 11–12, 349 P.3d 864, 869 (2015) (citation omitted).

Construing the evidence in Trident's favor, the Court finds disputed material facts preclude summary judgment in Glenn's favor. There remain disputed facts as to whether Glenn suffered was an adverse employment action and whether there is a causal connection between the purported adverse action and the protected activity. It is for the finder of fact to untangle these disputed factual issues. Summary judgment is DENIED as to these claims.

### 3. Constructive Discharge

Under Title VII, to establish constructive discharge, Glenn must show he endured a hostile work environment and that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." Pennsylvania State Police v. Suders, 542 U.S. 129, 134 (2004). "An employer may defend against such a claim by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus." Id. Under Washington law, "to establish constructive discharge, an employee must show that an employer engaged in a deliberate act, or a pattern of conduct, that made working conditions so intolerable that a reasonable person would have felt compelled to resign." Barnett v. Sequim Valley Ranch, LLC, 174 Wn. App. 475, 485 (2013). This is an objective standard. Id.

Construing the evidence in Trident's favor, the Court finds disputed facts exist as to whether Glenn was subject to constructive discharge under either standard. There are disputed facts concerning the nature of the claimed hostile work environment and whether a reasonable person in the same situation would have felt compelled to resign. And Trident has produced

evidence that it maintains policies that allowed Glenn to file internal complaints and that Glenn may have unreasonably failed to avail himself of the policies' remedial benefits. See Suders, 542 U.S. at 134. It is for the finder of fact to determine these disputed factual issues at trial. Summary judgment is DENIED as to these claims.

## CONCLUSION

On the evidentiary record before it, the Court finds that summary judgment is improper as to all of the claims that Glenn has pleaded in his Amended Complaint. The finder of fact must hear all of the evidence in order to resolve these claims. And the Court finds no basis on which to consider Glenn's request for summary judgment as to his unpleaded claims for gross negligence or violations of the FMLA. For these reasons, the Court DENIES the Motion for Summary Judgment.

The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

Dated May 20, 2022.

Marsha J. Pechman
United States Senior District Judge